IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHWEST ADMINISTRATORS, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>DAVID BEST, et al.,<br><br>        Defendant.<br>_____/ | No. C 04-2217 MJJ (MEJ)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

### I.   INTRODUCTION

Before the Court is Plaintiffs' Motion for Default Judgment, filed on August 2, 2005. After careful consideration of Plaintiffs' papers, relevant statutory and case law authority, and Good Cause appearing, the Court hereby RECOMMENDS that the District Court GRANT default judgment against Defendant for the reasons set forth below.

### II.   BACKGROUND

**A.   Factual Background**

The following factual background of this case is taken from the Plaintiff's Complaint and moving papers. Plaintiff Northwest Administrators, Inc., is the administrator of the Western Conference of Teamsters Pension Trust Fund (hereinafter "Trust Funds") and trustees of employee benefit plans within the meaning of Sections 3(1) and (3) and Section 502(d)(1) of ERISA, 29

U.S.C. §§ 1002(1) and (3) and § 1132(d)(1), and a multiemployer plan within the meaning of Sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 102 (37) and 1145. Trust Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA, 29 U.S.C., § 1132(d)(1). Defendant, David Best d/b/a Western Event Services ("Defendant") is a California corporation.

Effective January 1, 1999, Defendant entered into a collective bargaining agreement with Brotherhood of Teamsters Local No. 70, a labor organization in an industry affecting commerce. *See* Pentz Declaration, Exhibit 1. This collective bargaining agreement provides that Defendant shall make contributions to the Trust Funds on behalf of Defendant's employees on a regular basis on all hours worked, and that Defendant shall be bound to and abide by all the provisions of the respective Trust Agreements and Declarations of Trust of said Trust Funds (hereinafter "Trust Agreements"). The Trust Funds rely upon a self reporting system. Thus, Defendant has unique knowledge of the amounts of contributions that it is liable to pay each month, and has a fiduciary obligation to accurately report the amount to the Trust Funds.

Plaintiff alleges that Defendant has breached both the provisions of the collective bargaining agreement and the Trust Agreements by failing to complete and send in monthly reports and/or to pay all moneys due thereunder on behalf of Defendant's employees to the Trust Funds. Specifically, Plaintiff allege that Defendant failed and refused to pay in a timely manner contributions due for the months of October 2003 through March 2005 for account number 314200. Complaint at ¶ 3; Supplemental Declaration of Diane Andrade, Exhibit 8. After filing the instant suit, Defendant paid all the delinquent contributions in the amount of $6,269.00 and interest of $375.28 on August 18, 2005. After giving credit for payments made, Plaintiff states that the balance due and owing is $1,253.80 in liquidated damages, and $1,080.00 in attorney fees and $250.00 in the cost of suit.

/ / /

/ / /

/ / /

2

**B.     Procedural Background**

On June 4, 2004, Plaintiff filed a Complaint for Audit, Breach of Contract, Damages and Injunction. The claims for breach of contract and for injunction are based on Defendant's breach of the provisions of the collective bargaining agreement and Trust Agreements, and failure to complete monthly reports and/or to pay all moneys due under the Trust Agreements. The claim for audit is based on Plaintiff's request that the Court reserve Plaintiff's contractual right to audit Defendant for the months prior to judgement, and in the event of such audit, collect any additional sums which may be due. Plaintiff duly served Defendant with process in this matter on June 19, 2004.

On August 12, 2004, Plaintiff filed a Motion for Default Judgment.

On December 23, 2004, Plaintiff filed a Motion for Entry of Default.

On January 10, 2005, the Clerk entered Default against Defendant.

On March 22, 2005, this Court conducted a telephonic conference call with Plaintiff and Defendant and ordered Defendant to respond to an unanswered subpoena within 30 days. Defendant was to provide Plaintiff with the completed monthly reports that lists all employees, union and nonunion members, who performed work covered by the collective bargaining agreement with Teamsters Local 70 for the period of October 2003 to date. According to a letter Plaintiff submitted on April 26, 2005, Defendant complied with said request.

On August 2, 2005, Plaintiff filed a Motion for Default Judgment as well as the Declarations of Waltz Pentz, Diane Andrade, and Michael J. Carroll in support thereof. Plaintiff sued for the delinquent contributions in the amount of $6,269.00, $375.28 in interest, $1,253.80 in liquidated damages, $1,080.00 in attorney fees, and $250.00 for the cost of suit. Plaintiff also submitted a proposed order.

On August 10, 2005, the Honorable Martin J. Jenkins referred the instant matter to Magistrate Judge Maria-Elena James for a report and recommendation on Plaintiff's motion for default judgment.

On October 11, 2005, Plaintiff submitted a supplemental declaration of Diane Andrade,

which states that Defendant paid the delinquent contributions and interest. Therefore, Plaintiff now seeks $1,253.80 in liquidated damages,$1,080.00 in attorney fees, and $250.00 for the cost of suit. Plaintiff also filed Proposed Findings of Fact and Conclusions of Law.

On October 27, 2005, the Court held a hearing on the matter. Interestingly, neither Plaintiff nor Defendant were present for the hearing. As a result, this Court requested further briefing. This Court also gave Defendant an opportunity to respond.

On November 15, 2005, Plaintiff submitted further information as requested by the Court. To date, Defendant has not submitted a response.

### III.   DISCUSSION

**A.   Personal and Subject Matter Jurisdiction**

When a court is considering whether to enter a default judgment, it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Here, Defendant is a California corporation, so the Court may exercise personal jurisdiction. Moreover, the Court has subject matter jurisdiction because Plaintiffs' claim arises from Defendant's violation of various duties under ERISA, 29 U.S.C. §§ 1001 *et seq.*, 29 U.S.C. § 185.

**B.   Legal Standard**

Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court, following a default by a Defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986); *see also Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D. Cal. 2000). "Generally, upon an entry of default, the factual allegations of the Plaintiff's Complaint will be taken as true." *Id.* "For a default judgment, well-pleaded factual allegations are sufficient to

establish a defendant's liability. However, the allegations of the Complaint regarding the amount of damages suffered are not controlling." *Kingvision Pay-Per-View, Ltd. v. Backman, et al.*, 102 F. Supp. 2d 1196, 1197 (N.D. Cal. 2000) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F. 2d 1319, 1323-24 (7th Cir. 1983); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiffs' substantive claim, (3) the sum of money at stake in the action, (4) the possibility of a dispute concerning material facts, (5) whether the default was due to excusable neglect, and (6) the strong public policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Where a default judgment is granted, the scope of relief is limited by Federal Rules of Civil Procedure 54(c) and 55(d). "A judgment shall not be different in kind from or exceed in amount that prayed for in the demand for judgment" in the Complaint. Fed. R. Civ. P. 54(c), 55(d).

**C.   Legal Analysis**

The Court applies the following factors as articulated by the Ninth Circuit. *Eitel*, 782 F.2d at 1471-72.

First, the Court examines the possibility of prejudice to Plaintiff if default judgment is not granted. Here, Plaintiff and Defendant entered into a collective bargaining agreement under which Defendant is obligated to make benefit contributions. Were Defendant to have complied with the agreements as required, Plaintiff would have received contributions for hours worked and would not have incurred the requested attorneys' fees and costs in an attempt to enforce the agreements. Thus, the Court finds that Plaintiff would suffer prejudice if default judgment is not granted as Defendant's actions would continue to cause harm to Plaintiff, including the lack of contributions for all hours worked.

Second, the Court looks at the merits of the Plaintiff's substantive claim. In reviewing

1  Plaintiff's Complaint, motion for default judgment, declarations and attached exhibits, the Court
2  finds that the Plaintiff's have clearly established a valid claim for recovery by alleging an ERISA
3  violation in that: (1) Plaintiff is part of a multi-employer plan as defined by Section 3(1) of ERISA;
4  (2) Defendant is obligated to make benefit contributions under the terms of the plan; and (3)
5  Defendant failed to make contributions as required by the plan.  Thus, based on the pleadings,
6  Plaintiff is entitled to damages as requested.

7  Third, the Court looks at the sum of money at stake in the action.  This factor is meant to
8  focus on the size of the award requested, as courts are hesitant to enter default judgments where
9  large sums of money are at stake.  *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2nd
10 Cir. 1986) ("court could have considered whether the entry of default would lead to a harsh result or
11 to the entry of a large money judgment.").  However, the *Eitel* court relied in part on the fact that
12 Plaintiff was seeking "almost $3 million in damages" in holding that the district court did not abuse
13 its discretion in denying a default judgment.  *Eitel*, 782 F.2d at 1472.  Here, there are not large sums
14 of money at stake.  Plaintiff seeks $1,253.80 in liquidated damages, and $1,080.00 in attorney fees
15 and $250.00 for the cost of suit.  *See* Supplemental Declaration of Diane Andrade ¶¶ 2, 4.  Further,
16 an award of liquidated damages, interest and attorneys' fees is mandatory under 29 U.S.C. § 1132(g).
17 Thus, the Court finds that it would not be an abuse of the District Court's discretion to award the
18 requested amount in this case and this factor does not mitigate against the entry of a default
19 judgment.

20 The fourth factor of consideration is the possibility of a dispute concerning material facts.
21 Here, Walt Pentz, Diane Andrade, and Michael J. Carroll each provided declarations in support of
22 Plaintiff's motion for default judgment.  In Diane Andrade's declaration, she attests under penalty of
23 perjury, that the contributions, liquidated damages, and interest owed by the Defendant were
24 calculated in accordance with the methods called for in the Trust Agreement.  The Court notes that
25 Plaintiff served Defendant in this action and Defendant failed to respond to any allegations in the
26 Complaint, nor did Defendant file any opposition to Plaintiff's motion for default judgment.

Furthermore, Defendant paid the interest and outstanding contributions amounts after the commencement of this suit. According to Michael J. Carroll, Defendant also submitted the mandatory reporting forms to Plaintiff. Accordingly, the Court finds that Defendant has shown no dispute concerning material facts.

Fifth, the Court examines whether the default was due to excusable neglect. The *Eitel* opinion makes clear that this factor is directed at determining whether the Defendant had cause for neglecting to file a timely response to the Complaint. *Eitel*, 782 F.2d at 1472. In *Eitel*, the court found excusable neglect where the Defendant did not file a timely answer due to a belief that the case had settled before his answer was due. *Id.* Here, the Defendant was duly served with the Complaint in June of 2004. Although Defendant appeared for a telephonic conference call, Defendant has failed to submit any documents to the Court or appear to the hearing for Default Judgment.

The Court notes that Defendant has paid the outstanding contributions owed along with interest. Interestingly, the amount of money Defendant remitted to Plaintiff as payment excludes any monetary amount associated with bringing the instant suit. Based on these facts, it is possible that Defendant may have believed that remittance of the outstanding contributions and interest would essentially settle the case.

Even assuming Defendant mistakenly believed the case was settled, this Court gave Defendant another opportunity to respond to Plaintiff's claim. On October 27, 2005, the Court held a hearing for Plaintiff's motion for default judgment. Since neither Plaintiff nor Defendant were present for the hearing, this Court requested further briefing. This Court served defendant at two different addresses found in the Court's docket. Thus, affording Defendant yet another opportunity to respond. To date, the Court has not heard a response from Defendant. Accordingly, there are no grounds upon which this Court can find that the default resulted from excusable neglect.

Finally, the Court must make its determination in light of the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Although it is favorable to

resolve cases on their merits, the case at hand does not warrant a denial of default judgment solely on that ground. Accordingly, the Court hereby RECOMMENDS that the District Court grant Plaintiffs' Motion for Default Judgment.

## IV.   CONCLUSION

Based on the foregoing analysis, the Court hereby RECOMMENDS that the District Court GRANT Plaintiffs' Motion for Default Judgment in the following amounts: (a) $1,253.80 in liquidated damages, (b) $1,080.00 in attorney fees (c) $250.00 in costs.

Pursuant to Fed.R.Civ.P. 72, a party may serve and file objections to this Report and Recommendation within 10 days after being served with a copy of said report.

**IT IS SO RECOMMENDED.**

Dated: December 15, 2005

MARIA-ELENA JAMES
United States Magistrate Judge